2001 OK 85

**Don L. JOHNSON, Petitioner,**

v.

**CITY OF WOODWARD, State Insurance Fund, Workers' Compensation Court, Respondents.**

**No. 95,042.**

Supreme Court of Oklahoma.

Oct. 9, 2001.

As Corrected Dec. 6, 2001.

Rehearing Denied Dec. 4, 2001.

---

Duke Halley, Duke Halley Law Firm, P.L.L.C., Woodward, OK, attorney for petitioner Don L. Johnson.

James C. Ferguson, Bruce V. Winston, Walker, Ferguson and Ferguson, Oklahoma City, OK, attorneys for respondents City of Woodward and State Insurance Fund.

WINCHESTER, J.

¶1 This matter concerns a workers' compensation claim filed by claimant/ petitioner Don L. Johnson (hereinafter "Johnson") for injuries arising from an attack of stress-induced angina. The Workers' Compensation Court trial tribunal, D. Craig Johnston, trial judge, denied Johnson's claims for medical expenses and temporary total disability. The Court of Civil Appeals, Division I, sustained the trial tribunal's order.

## FACTS AND PROCEDURAL HISTORY

¶2 The record reflects the following facts to be undisputed. Johnson began his employment as a firefighter with the City of Woodward, Oklahoma in October, 1980. Johnson's pre-employment physical showed no respiratory or heart problems. On No-

vember 29, 1995, Johnson was admitted to the Woodward Hospital and Health Center with anterior chest pain radiating to the left arm. The record reflects that Johnson had cardiac catherization, angioplasty and placement of a stent in the mid-right coronary artery on December 1, 1995. The medical record reflects coronary artery disease involving the mid-right coronary artery as of December 1, 1995.

¶ 3 The record on appeal reveals that on May 6, 1999, Johnson experienced stress induced angina while fighting a structural fire at a residence in Woodward. The following morning, Johnson sought medical treatment. The record shows he was admitted to Presbyterian Hospital in Oklahoma City. A left heart catheterization was performed and it was discovered that Johnson's right coronary

had a ninety-five percent (95%) stenotic lesion. Johnson had a post coronary angiogram with angioplasty and stent placement to the right coronary artery. The record reflects that as of July 6, 1999, Johnson suffered from fixed coronary artery disease, post stent (2) placement. Johnson subsequently retired from service as a firefighter. The record reflects that he no longer could wear a respirator due to his heart condition and that exercise exacerbated this condition.

¶ 4 Johnson filed his amended Form 3 on May 5, 2000, alleging injury from a single incident and cumulative injury. The amended Form 3 stated his "heart and entire body" were injured or affected and the nature of his injury or illness was "heart problems." The trial tribunal found as a matter of law that the provisions of *11 O.S.Supp.2000, § 49–110*[1]

---

1. *11 O.S.Supp.2000, § 49–110.* "Certificates and other evidence of disability-Disability resulting from heart disease, injury to the respiratory system or cancer-Presumptions-Review of medical records," provides:

"A. No firefighter shall be retired, as provided in Section 49–109 of this title, or receive any pension from the System, unless there shall be filed with the State Board certificates of the firefighter's disability. Any member of the fire department of any municipality who is disabled as a result of heart disease, injury to the respiratory system or the existence of any cancer which heart disease, injury to the respiratory system or cancer was not revealed by the physical examination passed by the member upon entry into the department, shall be presumed to have incurred the heart disease, injury to the respiratory system or cancer while performing the firefighter's duties as a member of such department unless the contrary is shown by competent evidence.

"B. Medical treatment based on the presumptions prescribed by subsection A of this section shall be provided by the municipality as a job-related illness until a court of competent jurisdiction determines that the presumption does not apply. If it is subsequently determined that the illness is not job-related, the workers' compensation provider shall be reimbursed for expenditures made for health care services by the medical plan or benefit provided by the municipality for the employee.

"C. If any such member fails to submit evidence of a physical examination prior to entry into the fire department, there shall be no presumption the heart disease, injury to the respiratory system or cancer was incurred while performing the firefighter's official duties and it shall be the duty of the State Board to determine if the heart disease, injury to the respiratory system or cancer was incurred while performing the member's official duties.

"D. Whenever a participating municipality on behalf of a member or a member applies for a disability benefit, the application shall be accompanied by proof of injury unless otherwise provided and medical evidence supporting the existence of a disability, certified by the member's or municipality's physician, that the member is unable to perform the duties of a firefighter. Should the application be made by a municipality, the member may submit medical evidence or reports from the member's physician to the local board. If both the municipality's physician and the member's physician certify to the disability, the local board shall act upon the application.

"E. In regards to applications made by either an individual member or a municipality, should the physicians disagree, or if there is only one physician statement, the local board shall be required to have all the medical records concerning the applicant's disability reviewed by a physician selected by the local board and, if required by the reviewing physician, the local board shall have the member examined. The local board shall act upon all the physician's statements. Local board physician examinations and certifications shall be paid by the State Board and shall be limited to only those conditions upon which the member or the municipality on behalf of the member is requesting a disability.

"F. If the State Board deems appropriate, an independent physician may be selected by the State Board to review medical records and examine the member. The physicians selected by the State Board shall submit a report and recommendation to the State Board. The local board may request assistance from the State Board in selecting a physician. Final determination on all disability applications shall rest solely with the State Board."

and the presumption contained therein were inapplicable to claims filed pursuant to the Workers' Compensation Act. The trial tribunal also concluded there must be physical injury to the heart to constitute a compensable injury, under *85 O.S.Supp.2000, § 3* (10)(b) and (c), and no physical injury to Johnson's heart occurred as a result of the May 6, 1999, incident. The Court of Civil Appeals, Division I, affirmed the judgment of the trial tribunal denying workers' compensation benefits to Johnson.

## STANDARD OF REVIEW

¶ 5 At issue herein is the trial tribunal's interpretation of these aforementioned statutes which constitutes a legal ruling. Therefore, our review is *de novo.* "An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Manley v. Brown,* 1999 OK 79, ¶ 22, n. 30, 989 P.2d 448, 456, n. 30. "A compensation tribunal's *legal rulings* like those by a district court judge, are on review subject to an appellate court's plenary, independent and nondeferential reexamination." *Arrow Tool and Gauge v. Mead,* 2000 OK 86, ¶ 6, 16 P.3d 1120, 1123 (*emphasis original*) (footnote omitted.) The first impression issues we address on appeal are: (1) Does the presumption contained in *11 O.S.Supp.2000, § 49–110* (A) apply to proceedings before the Worker's Compensation Court trial tribunal? (2) Do the definitions of "injury" contained in *85 O.S.Supp.2000, § 3* (10)(a), (b) and (c), require actual physical injury to the heart be established for Johnson to obtain workers' compensation benefits? Our determination of these issues is dispositive of the case at bar and is premised solely upon independent issues of state law and not upon federal constitutional considerations. *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

## STATUTORY CONSTRUCTION

¶ 6 The intent of the legislature controls when interpreting statutes. *Tulsa County Deputy Sheriff's Fraternal Order of Police v. Board of County Commissioners of Tulsa County,* 2000 OK 2, ¶ 10, 995 P.2d 1124, 1125, *reh'g. denied,* (June 30, 1998), *appeal after remand,* 2000 OK 2, 995 P.2d 1124. It is presumed that the law-making body has expressed its intent in a statute and that it intended what it so expressed. *TXO Production Corp. v. Okl. Corp. Comm'n,* 1992 OK 39, ¶ 7, 829 P.2d 964, 969. Rules of statutory construction are employed only when legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity or conflict with other statutes. *Cooper v. State ex rel. Dep't. of Public Safety,* 1996 OK 49, ¶ 10, 917 P.2d 466, 468. The primary goal of rules of statutory construction is to ascertain the legislature's intent. *Ledbetter v. Alcoholic Bev. Laws Enforcement,* 1988 OK 117, ¶ 7, 764 P.2d 172, 179. Such intent must be gleaned from the statute in view of its general purpose and object. *TXO Production Corp.,* 1992 OK 39 at ¶ 7, 829 P.2d at 968. When legislative intent is expressed clearly in the statute, there is no room for further judicial inquiry. *George E. Failing Co. v. Watkins,* 2000 OK 76, ¶ 8, 14 P.3d 52, 56. "The best evidence of legislative intent is the statutory language itself." *Upton v. State Department of Corrections,* 2000 OK 46, ¶ 6, 9 P.3d 84, 86 (footnote omitted.) In the instant case, statutory construction is unnecessary because the legislature's intent can be ascertained from the plain language of the statutes.

## "INJURY" OR "PERSONAL INJURY"

¶ 7 Our inquiry begins with the interpretation of *85 O.S.Supp.2000, § 3* (10)(a), (b) and (c), defining "injury" or "personal injury" for purposes of the Workers' Compensation Act.[2] It is important to note the

2. 10. a. 'Injury' or 'personal injury' means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom and occupational disease arising out of and in the course of employment as herein defined. Only injuries having as their source a risk not purely personal but one that is causally connected with the conditions of employment shall be deemed to arise out of the employment.

"b. 'Injury' or 'personal injury' includes heart-related or vascular injury, illness or death only if resultant from stress in excess of that experienced by a person in the conduct of every-

legislature amended § 3 in November, 1997.[3] The definitions of "injury" or "personal injury" were reconfigured and moved from subsection (7) to subsection (10).

 When construing a statute which has been amended, we are mindful that the legislature may have intended either (a) to clarify that which previously appeared doubtful or (b) to effect a change in the existing law. *Arrow Tool & Gauge v. Mead,* 2000 OK 86, ¶ 15, 16 P.3d 1120, 1126.

¶ 8 The Workers' Compensation Court trial tribunal concluded Johnson suffered from angina induced by preexisting coronary artery disease. Order Denying Compensability at p. 2, Finding 4. It also found Johnson was in the course and scope of his employment at the time of the angina attack and the evidence supported a finding that "the physical stress at the time the angina pain initiated was in excess of that experienced by a person in the conduct of everyday living." Order Denying Compensability at p. 2, Findings 5 and 6, respectively. In Finding 7, page 2, the trial tribunal apparently applied § 3(10)(c) to the instant set of facts, stating:

"[Johnson] failed to establish by a preponderance of the medical evidence that a physical injury to the heart has occurred, as angina pain alone is insufficient to establish a compens[a]ble injury. Claimant's claim is therefore denied."

On page one of its order, Finding 2, the trial tribunal concludes:

"However, angina pain alone is insufficient without actual physical injury to the heart

to constitute an accidental injury *Haynes v. Pryor High School,* 1977 OK 1, 566 P.2d 852, 854." (*Emphasis original.*)

¶ 9 These findings establish the trial tribunal denied Johnson's claims for medical expenses and temporary total disability benefits because it concluded he did not establish by a preponderance of the evidence that physical injury to his heart occurred during the May 6, 1999, incident. In the current version of § 3(10)(b), (amended effective November 1, 1997), "injury" or "personal injury" includes heart-related or vascular *injury* or *illness* if it results from (1) stress in excess of that experienced by a person in the conduct of everyday living and (2) which stress arises out of and in the course of a claimant's employment. (*numbering added* ). We decided the *Haynes* case on November 30, 1976, and denied rehearing July 12, 1977, prior to the legislature's amendments to both statutes. At the time, compensation awards for heart-related injuries were limited to injuries attributable to coronary occlusion, thrombosis or myocardial infarction. *Haynes,* 1977 OK 1, ¶ 17, 566 P.2d 852, 855. This limitation on compensable injuries was lifted by the legislative amendments of November 1, 1977, that resulted in the current § 3(10)(a) and (b). Today, under Oklahoma's Workers' Compensation Act, coronary artery disease such as that suffered by Johnson is, indeed, a heart-related *illness.*[4]

 ¶ 10 Based upon the medical record in this case, coronary artery disease undermines and weakens a person's constitution

day living. Such stress must arise out of and in the course of a claimant's employment.

"c. 'Injury' or 'personal injury' shall not include mental injury that is unaccompanied by physical injury, except in the case of rape which arises out of and in the course of employment;"

3. Prior to amendment, the definitions of "injury" or "personal injury" were contained in § 3(7) and § 3(10) defined "Occupational disease." These two sections read as follows:

"(7) 'Injury or personal injury' means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom and occupational disease arising out of and in the course of employment as herein defined. Provided, only injuries having as their source a risk not purely personal but one that is reasonably connected

with the conditions of employment shall be deemed to arise out of the employment."

"(10) 'Occupational disease' means only that disease or illness which is due to causes and conditions characteristic of or peculiar to the particular trade, occupation, process or employment in which the employee is exposed to such disease."

4. Black's Law Dictionary 674 (5th ed.1979) defines illness as follows:

"Illness. Sickness, disease or disorder of body or mind. In insurance law, a disease or ailment of such a character as to affect the general soundness and healthfulness of the system seriously, and not a mere temporary indisposition which does not tend to undermine or weaken the constitution of the insured."

and is not a temporary condition. The record allows that this illness affects the general soundness of the heart and its health. As such, coronary artery disease constitutes a heart-related illness within the confines of (10)(b). The trial tribunal held Johnson's stress met the criteria set forth in (10)(a) and (b) and stated:

> "THAT the treating physicians who were cardiac specialists, diagnosed claimant's condition as Angina induced by pre-existing Coronary Artery Disease. (See records contained within claimant's Exhibit 5)." Finding 4, Page 2, Order Denying Compensability.

Nonetheless, it concluded no physical heart injury occurred and therefore denied benefits. Such a conclusion could be reached only if the trial tribunal mistakenly applied subsection (c). The application of subsection (c) to the instant facts is inappropriate because that subsection deals exclusively with "mental injury that is unaccompanied by physical injury, except in the case of rape...."

¶ 11 We addressed the appropriate application of subsection (c) in *Wal–Mart Stores, Inc. v. Reinholtz*, 1998 OK 11, 955 P.2d 223, even though the facts occurred in 1995, prior to the 1998 amendments. *Wal–Mart Stores, Inc. v. Reinholtz* involved a claimant who was raped by her supervisor while at work. As a result of the rape, the claimant suffered a back injury, a skin rash and psychological overlay for which there was no apparent physical cause. The trial tribunal found the claimant's back injury compensable and ordered benefits based upon her psychological overlay claim. We held:

> "Claimant's rape was an accidental injury arising out of and in the course of her

employment and sustain the trial court's award with regard to the psychological overlay benefits and treatment for Claimant's skin rash."

1998 OK 11, ¶ 6, 955 P.2d 223, 224.

¶ 12 In our assessment of the psychological or mental injury to the claimant therein, we considered *85 O.S.Supp.1992, § 3* (7)(c) and observed that although the 1992 version of the statute applied to the facts of the case, the statutory section including subsection (c) had been amended in 1998. *See*, 1998 OK 11, ¶ 12, n. 1, 955 P.2d 223 at 225, n. 1. We stated subsection (c), as amended, applied to psychological or mental injury and established an exception to the required accompaniment of physical injury, in cases of rape, arising out of and in the course of employment.

¶ 13 "The Act requires any psychological or mental injury be accompanied by physical injury in order to receive disability benefits for a debilitating psychological condition:

> " 'injury' or 'personal injury' shall not include mental injury that is unaccompanied by physical injury."

1998 OK 11, ¶ 12, n. 1, 955 P.2d 223, 225, n. 1.

## STATUTORY PRESUMPTION

¶ 14 The record reveals Johnson's injury is a heart-related illness which necessitated catheterization, angioplasty and insertion of a third stent in his right coronary artery as a result of the May 6, 1999, angina incident. This brings us to the second statutory section at issue herein, *11 O.S.Supp.2000, § 49–110(A)*. (See footnote one for text of amended statute.) This statute was amended by the legislature effective July 1, 1998.[5] The legislature's amendments

---

5. Prior to the July 1, 1998, amendments by the legislature, *11 O.S.Supp.1991, § 49–110* read as follows:

"§ 49–110. Certificates and other evidence of disability-Disability resulting from heart disease, injury to the respiratory system or cancer-Presumptions-Review of medical records

"No fire fighter shall be retired, as provided in Section 49–109 of this title, or receive any pension from the System, unless there shall be filed with the State Board certificates of the fire fighter's disability. Any member of the fire department of any municipality who is disabled as a result of heart disease, injury to the respiratory

system or the existence of any cancer which heart disease, injury to the respiratory system or cancer was not revealed by the physical examination passed by the member upon entry into the department, shall be presumed to have incurred the heart disease, injury to the respiratory system or cancer while performing the fire fighter's duties as a member of such department unless the contrary is shown by competent evidence. If any such member fails to submit evidence of a physical examination prior to entry into the fire department, there shall be no presumption the heart disease, injury to the respiratory system or cancer was incurred while performing the fire fighter's official duties and it shall be the duty of

to the statutes at issue are significant and intentional. We do not deem the legislature to have created an absurdity or to have done a vain and useless act. *Comer v. Preferred Risk Mut. Ins. Co.*, 1999 OK 86, ¶ 18, 991 P.2d 1006; *Bryant v. Commissioner of the Dept. of Public Safety*, 1996 OK 134, ¶ 11, 937 P.2d 496. Since the Workers' Compensation Court trial tribunal ultimately determined Johnson was in the course and scope of his employment at the time of the attack of angina pain, (Finding 5, p. 2, Order Denying Compensability,) the importance of the statutory presumption contained in *11 O.S.Supp.2000, § 49–110(A)* is diminished. However, its applicability to the instant case, and specifically to a presumption Johnson's heart-related illness was incurred while performing firefighting duties, has important consequences. It is the aggravation of Johnson's pre-existing coronary artery disease (Finding 4, p. 2, Order Denying Compensability) as evidenced and discovered with the onset of angina at the May 6, 1999, incident, that constitutes "heart-related illness" compensable under the Worker's Compensation Act.

¶ 15 The 1998 amendments contain language specifically referencing the workers' compensation carriers and remove language that gave the Firefighters Pension and Retirement System State Board the authority to determine whether the injury occurred during the course of the firefighter's official duties. The amendments instead designate the "court of competent jurisdiction."

¶ 16 The Workers' Compensation Court trial tribunal is a statutory tribunal of limited jurisdiction that is vested with the authority to determine liability of the employer and its insurance carrier toward the claimant. *Red Rock Mental Health v. Roberts*, 1996 OK 117, 1997 OK 133, ¶ 14, 940 P.2d 486, 490.

> "The Workers' Compensation Court's range of cognizable claims is restricted to (a) those asserted by a claimant against the employer for compensable on-the-job harm or death and (b) claims by medical providers to successful claimants."

*Red Rock Mental Health v. Roberts*, 1996 OK 117, 1997 OK 133, ¶ 14, 940 P.2d 486, 490–491 (footnote omitted).

As such, it is vested with the authority to determine whether insurance carriers successfully rebut the presumption contained in *11 O.S.Supp.2000, § 49–110(A)* by competent evidence.

¶ 17 Respondents argue *11 O.S.Supp.2000, § 49–110* is restricted to the issues inherently within the jurisdiction of the Firefighters Pension and Retirement System Board. This ignores the legislature's dictate contained in § 49–110(B) that the *workers' compensation carrier* must provide medical treatment unless or until "the contrary is shown by competent evidence." Subsection (B) references a "court of competent jurisdiction" with the jurisdiction to determine, subsequently, whether the carrier has rebutted

the State Board to determine if the heart disease, injury to the respiratory system or cancer was incurred while performing the member's official duties. Whenever a participating municipality on behalf of a member or a member applies for a disability benefit, the application shall be accompanied by proof of injury unless otherwise provided and medical evidence supporting the existence of a disability, certified by the member's or municipality's physician, that the member is unable to perform the duties of a fire fighter. Should the application be made by a municipality, the member may submit medical evidence or reports from the member's physician to the local board. If both the municipality's physician and the member's physician certify to the disability, the local board shall act upon the application. In regards to applications made by either an individual member or a municipality, should the physicians disagree, or there is only one physician statement, the local board shall be required

to have all the medical records concerning the applicant's disability reviewed by a physician selected by the local board and, if required by the reviewing physician, the local board shall have the member examined. The local board shall act upon all the physician's statements. Local board physician examinations and certifications shall be paid by the State Board and shall be limited to only those conditions upon which the member or the municipality on behalf of the member is requesting a disability. If the State Board deems appropriate, an independent physician may be selected by the State Board to review medical records and examine the member. The physicians selected by the State Board shall submit a report and recommendation to the State Board. The local board may request assistance form the State Board in selecting a physician. Final determination on all disability applications shall rest solely with the State Board."

the presumption of subsection (A) by competent evidence and whether the illness is "job-related." The tribunal with such jurisdiction to determine when a workers' compensation carrier must provide medical benefits is the Workers' Compensation Court trial tribunal. In the event that tribunal determines the contrary is shown by competent evidence, then subsection (B) provides "the workers' compensation provider shall be reimbursed for expenditures made for health care services by the medical plan or benefit provided by the municipality for the employee." It is this statutory language that integrates *11 O.S.Supp.2000, § 49–110* into the fabric of Oklahoma's Workers' Compensation system by its specific references thereto. This statutory interpretation harmonizes the provisions contained in *85 O.S.Supp.2000, § 3* (10)(a) and (b) with *11 O.S.Supp.2000, § 49–110* (A) and (B).

¶ 18 The legislature determined any member of a fire department disabled as a result of heart disease not revealed by the physical examination passed upon entry into the department is entitled to a presumption such heart disease was incurred while performing duties as a member of the fire department, *unless the contrary is shown by competent evidence.* Although § 49–110(A) may be inartfully drawn, it also is clear from the plain language of this statute that the legislature intended to weave this presumption into the Worker's Compensation system because it specifically provided the workers' compensation carrier should provide the medical benefits to disabled firefighters. In order to be reimbursed for payments made to disabled firefighters for health care, the workers' compensation carrier first must appear before the tribunal that determines the workers' compensation carrier's responsibility to provide benefits, then show that tribunal "the contrary, by competent evidence." *11 O.S.Supp.2000, § 49–110* (A) and (B).

¶ 19 If we ignore the insertion of the workers' compensation carrier's liability for payment of medical benefits and the jurisdiction of the Workers' Compensation Court trial tribunal over proceedings to rebut the presumption in § 49–110(A), then we deem the legislature's July 1, 1998, amendments to be vain and useless. These amendments represent a *later-in-time* declaration of legislative intent, to which we give effect in today's pronouncement. *Upton v. Department of Corrections,* 2000 OK 46, ¶ 13, 9 P.3d 84, 88.

¶ 20 Respondents rely heavily on our decision in *Haynes v. Pryor High School,* 1977 OK 1, 566 P.2d 852, to argue angina is insufficient to trigger the definition of "injury" or "personal injury" contained in § 3(a) and (b). However, in addition to the fact that *Haynes* was decided prior to the November 1, 1977, and July 1, 1988, statute amendments, the *Haynes* holding has been recognized as inapposite in situations when, as here, the injury reflects a pre-existing and known pathology that either is accelerated or advanced.[6] We addressed the current impact aggravation of a pre-existing condition has in *Worley v. Purcell Nursing Home,* 2000 OK 77, ¶ 5, 15 P.3d 496, 498, wherein we stated *"aggravation of a pre-existing condition "* (emphasis original) constitutes "injury" if the other conditions of § 3(10)(a) and (b) are met. Such is the case at bar. With the benefit of the presumption contained in *11 O.S.Supp.2000, § 49–110* (A), Johnson was entitled to workers' compensation benefits based upon the trial tribunal's own findings of fact.

¶ 21 Respondents raise for the first time on appeal an equal protection issue as to § 49–110, arguing its presumption unconstitutionally places firefighters in a special class. However, the record clearly shows the question of the constitutionality of the statute was not presented to the Workers' Compensation Court trial tribunal and no reference appears in the record on appeal. Therefore we will not consider such question on appeal. *See Northwest Datsun v. Oklahoma Motor Vehicle Com'n,* 1987 OK 31, ¶ 16, 736 P.2d 516, 520, wherein appellants brought an equal protection challenge to the constitutionality of certain legislation but failed to present the question to the trial court and raised the issue for the first time in the

6. *Refrigerated Transport Inc. v. Creek,* 1979 OK 11, ¶ 3, 590 P.2d 197, 201, (Opala, J., concurring.)

briefs on appeal. Our review in *Northwest Datsun* did not indicate the public interest and welfare required us to entertain the equal protection challenge on appeal and declined to consider the constitutional question raised on appeal. Our analysis in the instant matter leads us to the same conclusion.

## CONCLUSION

¶ 22 It is the legislature's intent that the two acts be understood in conjunction with each other. Basing our conclusion on the plain and unambiguous language found in *85 O.S.Supp.2000, § 3* (10)(a) and (b) and in *11 O.S.Supp.2000, § 49–110* (A), we hold Johnson's exacerbated coronary artery disease signaled by his incident of angina on May 6, 1999, is a heart-related illness contemplated by the legislature and within the meaning of the statute, as amended, and thereby constitutes an "injury" under § 3(10)(a) and (b). The Workers' Compensation Court trial tribunal erred when it found as a matter of law Johnson was not entitled to the presumption contained in § 49–110(A) that he incurred heart disease while performing his duties as a firefighter. We hold the trial tribunal further erred as a matter of law when it concluded Johnson's exacerbated coronary artery disease did not constitute an "injury" under *85 O.S.Supp.2000, § 3* (10)(a) and (b) and denied him workers' compensation benefits for medical expenses and temporary total disability.

¶ 23 On certiorari previously granted upon the claimant Johnson's petition,

¶ 24 HARGRAVE, C.J., WATT, V.C.J., HODGES, KAUGER, SUMMERS, BOUDREAU, WINCHESTER, JJ., concur.

¶ 25 LAVENDER, OPALA, JJ., concur in result.